**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| ANIRUDH GOVIL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC. and THE HOME DEPOT, INC.<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Anirudh Govil ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Defendants Home Depot U.S.A., Inc. and The Home Depot, Inc. ("Defendant" or "Home Depot"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1. This class action concerns Defendants' practice of increasing consumer prices in response to tariffs imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701, *et seq*. Specifically, Defendants passed the costs associated with the unlawful IEEPA tariffs on to Plaintiff and the putative Classes through increased prices, causing Plaintiff and the

putative Classes to pay more for Defendants' products than they otherwise would have paid.

2. Home Depot is a major home improvement retailer engaged in the sale and distribution of a wide range of home improvement products, including appliances, flooring, tools, paint, kitchen finishes, building materials, hardware, and related products. Incorporated in 1978, Home Depot is the world's largest home improvement retailer based on net sales, operating more than 2,000 stores in the United States and offering more than 1 million products online.[1]

3. This dispute centers on Home Depot's conduct in passing unlawful tariff costs on to consumers and subsequently seeking reimbursement of those same tariff payments from the government. Under 19 U.S.C. §§ 1484 and 1505, the importer of record is the party entitled to seek a refund of duties later determined to have been unlawfully collected. Home Depot, and not its customers, is the importer of record. Home Depot passed the cost of those duties on to consumers through increased prices and reduced promotions, requiring Plaintiff and the putative Classes to bear the economic burden of the tariffs.[2] Although Home Depot may recover the

---

[1] *The Home Depot, Inc., Annual Report* (Form 10-K) for the fiscal year ended February 1, 2026, https://www.sec.gov/Archives/edgar/data/354950/000162828026019436/hd-20260201.htm; *About Us, THE HOME DEPOT*, https://corporate.homedepot.com/page/about-us (last visited September 1, 2026).

[2] Nick Lichtenberg, *Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs*, Fortune (August 13, 2025) https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/ (last visited September 1, 2026).

tariff payments from the government, Plaintiff and the putative Classes, who bore those payments in economic terms, will recover nothing.

4. Thousands of companies have sought recovery of IEEPA tariff payments through proceedings before the U.S. Court of International Trade ("CIT"), and the CIT has determined that eligible importers may receive refunds, together with applicable interest, for unlawfully collected tariff amounts. In addition, on April 20, 2026, U.S. Customs and Border Protection ("CBP") implemented the Consolidated Administration and Processing of Entries ("CAPE"), which permits importers of record to submit and process requests for refunds of IEEPA tariffs.[3]

5. As of July 10, 2026, approximately $121.75 billion in refund claims had been accepted for processing, and approximately $86.3 billion had been completed and sent to the U.S. Department of the Treasury for disbursement.[4] As to Home Depot, its Chief Financial Officer, Richard McPhail ("CFO McPhail"), stated during the Company's May 19, 2026, earnings call that Home Depot had filed for those tariff refunds and, as of that date, had received only an "immaterial amount." On August 18, 2026, CFO McPhail stated that Home Depot had received $730

---

[3] *International Emergency Economic Powers Act (IEEPA) Duty Refunds,* https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds(last visited September 1, 2026).

[4] Declaration of Brandon Lord ¶ 5, *Euro-Notions Florida, Inc. v. United States*, No. 1:25-cv-00595 (Ct. Int'l Trade), ECF No. 45 (July 13, 2026).

million in tariff refunds during its second quarter, and that those refunds "represent the vast majority of what we would expect to receive."[5]

6. This action seeks to recover monetary damages on behalf of Plaintiff and the putative Classes for the unlawful tariff overcharges they paid as a result of Home Depot's pass-through of the IEEPA tariffs. Accordingly, Plaintiff and the putative Classes seek damages representing the amounts by which Home Depot's prices were increased and/or promotions were reduced to account for the unlawful tariff costs. Plaintiff further seeks interest running both before and after judgment, the costs of suit, an award of attorneys' fees, and whatever additional relief the Court concludes is warranted.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The proposed Class comprises more than 100 members. At least one member of the Class is a citizen of a state different from Defendants' state of citizenship, and therefore minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

[5] The Home Depot, Inc., Q2 2026 Earnings Call Transcript (Aug. 18, 2026), https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2026/hd-2q26-transcript.pdf (last visited September 1, 2026).

8. This Court has personal jurisdiction over Defendants because Defendants are registered to conduct business in the State of Georgia maintain a continuous and systematic business presence in this District, including the operation of numerous retail stores and the sale and distribution of home improvement products to consumers throughout this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District, and because Defendants are headquartered in this District.

**PARTIES**

10. Plaintiff Anirudh Govil is a citizen and resident of the State of California, residing in Milpitas, California. During the Class Period, Plaintiff purchased a shower head from Home Depot on February 13, 2026, for $14.38 through an online purchase on homedepot.com. Upon information and belief, Plaintiff paid a higher price for these products than Plaintiff would have paid but for Defendants' pass-through of the unlawful IEEPA tariff costs.

11. During a visit to the Milpitas, California store, Plaintiff inquired about the price of cabinet wood, and a Home Depot employee told him that the price had increased because of tariff-related costs. Plaintiff did not purchase the wood because of the increased price. Plaintiff would not have purchased the shower head had he known there was an increase in price due to tariffs.

12. Defendant Home Depot U.S.A., Inc. is a for-profit corporation organized under the laws of the State of Delaware, with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339. Home Depot U.S.A., Inc. is a major home improvement retailer that sells and distributes a wide range of home improvement products, including appliances, flooring, tools, paint, kitchen finishes, building materials, hardware, and related products, through more than 2,000 retail stores in the United States and online at https://www.homedepot.com.

13. Defendant The Home Depot, Inc. is a for-profit corporation organized under the laws of the State of Delaware, with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339. The Home Depot, Inc. is the parent company of Home Depot U.S.A., Inc. and exercises control over and participates in the business operations, pricing practices, and trade-policy decisions of Home Depot U.S.A., Inc. Defendants Home Depot U.S.A., Inc. and The Home Depot, Inc. are collectively referred to herein as “Defendants” or “Home Depot.”

## FACTUAL ALLEGATIONS

14. Home Depot is the world’s largest home improvement retailer based on net sales for fiscal 2025, selling products including appliances, flooring, tools, paint, kitchen finishes, building materials, hardware, and numerous other home improvement products. In the United States, Home Depot operates 2,035 stores. A typical Home Depot store stocks approximately 30,000 to 40,000 items during the

year, and the Company offers more than one million products online. Home Depot reported net sales of approximately $164.7 billion in Fiscal Year 2025. [6]

## I. OVERVIEW OF THE IEEPA TARIFF

15. During the 2024 presidential campaign, then-candidate Donald Trump publicly advocated for substantial tariffs on goods imported into the United States. Following the election, those proposals continued to form a central component of the Administration's trade policy.[7]

16. A succession of executive orders issued beginning in February 2025 invoked IEEPA as authority for import duties. Rates on Chinese-origin merchandise reached a combined 145 percent between April 10 and May 14, 2025, and a baseline rate of 10 percent applied to goods from nearly all other trading partners. [8]

---

[6] *The Home Depot, Inc., Annual Report (Form 10-K)* for the fiscal year ended February 1, 2026, Item 1 & Item 8, https://www.sec.gov/Archives/edgar/data/354950/000162828026019436/hd-20260201.htm; *About Us, THE HOME DEPOT*, https://corporate.homedepot.com/page/about-us (last visited August 25, 2026).

[7] Alan Wm. Wolff, *Trump's proposed blanket tariffs would risk a global trade war*, PETERSON INST. FOR INT'L ECON. (May 29, 2024), https://www.piie.com/blogs/realtime-economics/2024/trumps-proposed-blanket-tariffs-would-risk-global-trade-war (last visited September 1, 2026); *See* also Costas Pitas, *Trump vows new Canada, Mexico, China tariffs*, REUTERS (Nov. 26, 2024), https://www.reuters.com/world/us/trump-promises-25-tariff-products-mexico-canada-2024-11-25/ (last visited September 1, 2026).

[8] See Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 1, 2025); Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 2, 2025), https://www.govinfo.gov/app/details/FR-2025-04-07/2025-06063; *See* also Cong. Rsch. Serv., R45618, Christopher Casey, Jennifer Elsea & Liana Rosen, *The International Emergency Economic Powers Act*, CONGRESS. Gov (September 1, 2025), https://www.congress.gov/crs-product/R45618 (last visited September 1, 2026).

17. On May 28, 2025, the U.S. Court of International Trade held that the President had exceeded the authority granted to him under IEEPA. *See V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). The Federal Circuit affirmed in relevant part on August 29, 2025. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (en banc). On February 20, 2026, the Supreme Court held that IEEPA does not authorize the President to impose tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026).[9]

18. On February 22, 2026, U.S. Customs and Border Protection ("CBP") announced that it would cease collecting duties imposed pursuant to IEEPA at 12:00 a.m. Eastern Time on February 24, 2026.[10]

19. Collections under the program totaled approximately $166 billion across more than 53 million entries made by more than 330,000 importers.[11] Analysts estimated that U.S. consumers would bear approximately two-thirds of the cost of the tariffs.[12]

---

[9] Learning Resources, Inc. v. Trump, 607 U.S. 229 (2026), https://www.supremecourt.gov/opinions/25pdf/607us2r12_8nj9.pdf (last visited September 1, 2026).

[10] CBP, CSMS #67834313, Ending Collection of International Emergency Economic Powers Act Duties (February 22, 2026); *See* also E*nding Certain Tariff Actions,* THE WHITE HOUSE (Feb. 20, 2026), https://www.whitehouse.gov/presidential-actions/2026/02/ending-certain-tariff-actions/ (last visited September 1, 2026).

[11] Declaration of Brandon Lord ¶ 12, Atmus Filtration, Inc. v. United States, No. 1:26-cv-01259 (Ct. Int'l Trade), ECF No. 31.

[12] Nick Lichtenberg*, Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs*, FORTUNE (August 13, 2025) https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/ (last visited September 1, 2026).

## II. HOME DEPOT'S CONDUCT IN RESPONSE TO THE IEEPA TARIFFS

20. Home Depot was incorporated in 1978. The Company reported net sales of approximately $164.7 billion in Fiscal Year 2025.[13]

21. Home Depot is a significant importer of consumer products into the United States. Home Depot maintains sourcing offices and supplier relationships in countries subject to the IEEPA tariffs, including China, Mexico, Canada, India, Vietnam, and Taiwan.[14]

22. Following the initial announcement of the IEEPA tariffs, Home Depot indicated that it expected to largely preserve its existing pricing across its product portfolio. On the Company's May 20, 2025 earnings call, Executive Vice President of Merchandising Billy Bastek stated that Home Depot intended to generally maintain pricing across its portfolio. In prepared remarks on the same call, Chief Executive Officer Ted Decker stated that more than 50 percent of the Company's purchases are sourced in the United States. In a contemporaneous interview, CFO

---

[13] *The Home Depot, Inc., Annual Report (Form 10-K) for the fiscal year ended February 1, 2026*, https://www.sec.gov/Archives/edgar/data/354950/000162828026019436/hd-20260201.htm.

[14] *The Home Depot, Inc., Annual Report (Form 10-K) for the fiscal year ended February 1, 2026*, Item 1, https://www.sec.gov/Archives/edgar/data/354950/000162828026019436/hd-20260201.htm

McPhail attributed the Company's pricing position to its scale, supplier partnerships, and productivity initiatives.[15]

23. Home Depot subsequently revised its position. During the Company's August 19, 2025 earnings call, Executive Vice President for Merchandising William Bastek acknowledged that the higher tariff rates applicable to imported goods would result in price increases in certain product categories.[16] Bastek further indicated that Home Depot was addressing the impact of the tariffs not only through higher prices, but also by reducing promotional activity.[17]

24. Separately, in a media interview on the same day as that earnings call, CFO McPhail indicated that price increases would take effect in certain imported product categories, explaining that the higher tariff rates applicable to imported goods would result in corresponding price adjustments.[18]

25. Available price-tracking data and consumer observations indicate that Home Depot began increasing prices around the time the IEEPA tariffs took effect.

---

[15] Melissa Repko, *Home Depot doesn't plan to raise prices due to tariffs,* NBC NEWS (May 20, 2025), https://www.nbcnews.com/business/economy/home-depot-doesnt-plan-tariff-price-hikes-rcna207898 (last visited September 1, 2026).

[16] The Home Depot, Inc., Q2 2025 Earnings Call Transcript, https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/reports-and-presentations/quarterly-earnings/2025/hd-2q25-transcript-vf.pdf(last visited September 1, 2026).

[17] *Id.*

[18] Chris Isidore, *Home Depot says it will raise some prices because of tariffs*, YAHOO FINANCE (Aug. 19, 2025), https://finance.yahoo.com/news/home-depot-says-raise-prices-133009929.html (last visited September 1, 2026).

These pricing changes were consistent with Home Depot passing tariff-related costs through to consumers by increasing prices and/or reducing promotional discounts.

26. A pricing analysis published by the web-data firm Bright Data, based on weekly tracking of Home Depot listings beginning in early March 2025, reported listed-price increases averaging approximately 15 percent across affected categories, with appliances among the highest — approximately 45 percent of tracked appliance items rose by just over 15 percent.[19]

27. Home Depot employees publicly documented the repricing as it occurred. On April 17, 2025, an employee assigned to Home Depot's Merchandising Execution Team reported that the team's ordinary workload had been displaced by a sudden influx of price adjustments, with increases of $5, $10, and in some instances $100, and that bulk purchase options were being withdrawn. The same employee reported that a colleague updating prices in the hardware department found that the price of a door stopper had risen from $7 to $17.[20]

28. Days later, on April 23, 2025, another Home Depot employee, who identified themselves as a member of the Merchandising Execution Team

---

[19] Jennifer Burns, *Home Depot tariff price increases, what do the numbers look like?* BRIGHT DATA FOR JOURNALISTS (Sept. 15, 2025), https://datatellsthestory.substack.com/p/home-depot-tariff-price-increases(last visited September 1, 2026).

[20] *Is anyone else seeing the huge price hike this week?,* Reddit, r/HomeDepot (Apr. 17, 2025), https://www.reddit.com/r/HomeDepot/comments/1k1nm1t/is_anyone_else_seeing_the_huge_price_hike_this/.

responsible for price adjustments, reported that numerous Milwaukee M18 and M12 tools and batteries were being repriced upward by $20 to $30.[21]

29. Consumers observed the same pattern. On April 21, 2025, a customer tracking the price of a Milwaukee socket set sold by Home Depot reported that the price had risen from $45 to $50 over the course of approximately one week, and that other items appeared to have increased by ten percent or more.[22]

## CLASS ALLEGATIONS

30. Plaintiff brings these claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class and Subclass (collectively, "the Class"):

**Nationwide Class:**

All natural persons in the United States who, between February 4, 2025 and February 24, 2026 (the "Class Period"), purchased from Home Depot one or more products whose price was increased and/or whose promotional discount was reduced as a result of tariffs imposed pursuant to the IEEPA.

**California Subclass:**

All natural persons in the California who, between February 4, 2025 and February 24, 2026 (the "Class Period"), purchased from Home Depot one or more products whose price was increased and/or whose

[21] *Tarrifs raising prices of tools and batteries,* Reddit, r/MilwaukeeTool (April 23, 2025), *https://www.reddit.com/r/MilwaukeeTool/comments/1k6009z/tarrifs_raising_prices_of_tools_and_batteries/.*

[22] *Prices going up at Home Depot,* Reddit, r/MilwaukeeToo (Apr. 21, 2025), https://www.reddit.com/r/MilwaukeeTool/comments/1k4rttf/prices_going_up_at_home_depot/.

promotional discount was reduced as a result of tariffs imposed pursuant to the IEEPA.

31. Specifically excluded from the Class are: Defendants and their officers, directors, agents, trustees, parents, subsidiaries, affiliates, successors, and assigns; all persons who make a timely election to be excluded from the Class; and the judge assigned to this action and any member of the judge's immediate family.

32. Plaintiff reserves the right to amend the Class and Subclass definitions if further investigation and discovery reveal that the Class should be expanded, narrowed, further divided into subclasses, or otherwise modified.

33. **NUMEROSITY:** The exact number of Class members is unknown to Plaintiff at this time but is believed to number in the millions, given that Home Depot operates more than 2,000 stores in the United States, reported approximately $164.7 billion in total sales in Fiscal Year 2025. The members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities may be ascertained from records maintained by Defendants.

34. **COMMONALITY:** Common questions of fact and law exist as to all Class members and predominate over any questions affecting only individual members of the Class. Such common questions include, but are not limited to:

a. Whether Defendants increased prices and/or reduced promotions on products sold to Class members in response to the IEEPA tariffs;

b. Whether the IEEPA tariffs were unlawful;

c. Whether Defendants sought and/or received refunds from the United States government for the unlawful IEEPA tariff payments;

d. Whether Defendants retained the benefit of both the price increases charged to consumers and the tariff refunds received from the government;

e. Whether Defendants' conduct was deceptive, unfair, or unconscionable within the meaning of the applicable consumer protection statutes;

f. Whether Defendants were unjustly enriched at the expense of the Class;

g. The proper measure of damages or restitution; and

h. Whether Plaintiff and the Class are entitled to injunctive or declaratory relief.

35. **TYPICALITY:** Plaintiff's claims are typical of the claims of the Class members because Plaintiff, like all Class members, purchased tariff-affected products from Home Depot at prices that were inflated by the pass-through of unlawful IEEPA tariff costs and was thereby injured in the same manner as all other Class members.

36. **ADEQUACY:** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests that are antagonistic to or in conflict with the Class. Plaintiff has retained attorneys experienced in class action litigation who will adequately represent the interests of the Class.

37. **SUPERIORITY:** A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The damages suffered by individual Class members are small relative to the burden and expense of individual litigation, making it impracticable for Class members to seek redress individually. Individual litigation would impose an undue burden upon the courts and would create a risk of inconsistent or contradictory rulings, which a class action would avoid. Defendants have acted on grounds generally applicable to the Class, making class-wide relief appropriate under Rule 23(b)(2). The common questions of law and fact identified above predominate over any individual issues, and a class action is a superior method for resolving this controversy under Rule 23(b)(3).

## CAUSES OF ACTION

### COUNT I
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

38. Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs 1 through 37 above as if fully set forth herein.

39. Plaintiff brings this cause of action on behalf of himself and all California Subclass members.

40. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff proceeds under each of the UCL's three prongs.

41. Defendants engaged in unlawful, unfair, and fraudulent business practices by increasing the prices of their products and/or reducing promotional discounts in order to recoup the costs of the unlawful IEEPA tariffs and by then seeking and/or receiving refunds of those same tariff payments from the United States government, all while failing to return the overcharges to the consumers who bore them.

42. Plaintiff has standing under the UCL because he lost money or property as a result of Defendants' business practices: he paid more for Defendants' products than he otherwise would have paid. Cal. Bus. & Prof. Code § 17204.

43. Defendants' omissions were material. Home Depot did not disclose to Plaintiff and the California Subclass members that it could recover the tariff costs it was passing through, or that consumers would receive no portion of any such recovery. Plaintiff and the California Subclass members would not have purchased Defendants' products, or would have paid significantly less for them, had they known these facts.

44. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and the California Subclass members have been injured in that they paid more for Defendants' products than they would have paid absent the unlawful tariff pass-through.

45. Plaintiff and the California Subclass members lack an adequate remedy at law and seek all available relief under the UCL, including restitution of the amounts by which Defendants were unjustly enriched at their expense, injunctive relief, and reasonable attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5. See Cal. Bus. & Prof. Code § 17203.

**COUNT II**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class, Pleaded in the Alternative)**

46. Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs 1 through 37 above as if fully set forth herein.

47. Plaintiff brings this cause of action on behalf of himself and all members of the Nationwide Class.

48. Defendants received a tangible economic benefit from the Class by increasing prices and/or reducing promotional discounts on consumer products in order to recoup the costs of the unlawful IEEPA tariffs. The price increases resulted in Plaintiff and the Class paying more for Home Depot's products than they otherwise would have paid.

49. Defendants have also sought and/or received refunds of those same IEEPA tariff payments from the United States government. Defendants' Chief Financial Officer, Richard McPhail, confirmed during the Company's May 19, 2026 earnings call that Home Depot had "filed for those tariff refunds." As of July 10, 2026, approximately $121.75 billion in tariff refund claims had been accepted for processing through the CAPE system, with approximately $86.3 billion completed.

50. Defendants thus stand to retain the benefit of both the overcharges collected from consumers and the refunds recovered from the government for the identical tariff obligations.

51. It would be unjust and inequitable for Defendants to retain the price increases collected from consumers when Defendants are simultaneously recovering—or are entitled to recover—the same tariff costs from the government. Equity and good conscience require that Defendants disgorge or make restitution of the amounts by which they were unjustly enriched.

52. Plaintiff and the Nationwide Class lack an adequate remedy at law and are entitled to restitution and/or disgorgement of all amounts by which Defendants were unjustly enriched.

## COUNT III
## Money Had and Received
## (On Behalf of Plaintiff and the Nationwide Class)

53. Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs 1 through 37 above as if fully set forth herein.

54. Plaintiff brings this cause of action on behalf of himself and all members of the Nationwide Class.

55. Home Depot recouped a substantial portion of the IEEPA duties it remitted to CBP through increased prices and reduced promotional discounts on products sold to Plaintiff and the Class. As a result, the economic burden of those duties was borne by Home Depot's customers rather than by Home Depot.

56. The IEEPA tariffs were held unlawful by the Supreme Court of the United States. *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). U.S. Customs and Border Protection has established a process through which importers of record may obtain refunds of IEEPA duties, and Home Depot has obtained such refunds.

57. Home Depot has received refunds of IEEPA duties it paid, including $730 million received during its second quarter of fiscal 2026. To the extent Home Depot retains the corresponding price increases collected from consumers, it retains money for a cost it no longer bears.

58. Home Depot received money belonging to Plaintiff and the Class, benefited from its receipt, and under principles of equity and good conscience should not be permitted to retain it. Plaintiff and the Class are entitled to recover that money in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. An order certifying the Class and Subclass as defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b. An order declaring that Defendants' conduct, as described herein, violates the statutes and common law principles referenced herein;

c. An award of compensatory damages to Plaintiff and the Class in an amount to be determined at trial, representing the tariff-related overcharges paid by the Class;

d. An order of restitution and/or disgorgement requiring Defendants to disgorge all amounts by which they were unjustly enriched through the dual recovery of tariff costs from consumers and tariff refunds from the government;

e. An award of statutory damages, and/or penalties to the extent available under applicable law;

f. An award of pre-judgment and post-judgment interest on all amounts awarded;

g. An award of reasonable attorneys' fees and costs;

h. Injunctive relief requiring Defendants to return to consumers the tariff-related overcharges upon receipt of tariff refunds from the government; and

i. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: September 1, 2026

**HERMAN JONES LLP**

*/s/ John C. Herman*

John C. Herman
(Ga. Bar No. 348370)
Candace N. Smith
(Ga. Bar No. 654910)
Carlton R. Jones
(Ga. Bar No. 940540)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326
Telephone: (404) 504-6500
Facsimile: (404) 504-6501
jherman@hermanjones.com
csmith@hermanjones.com
cjones@hermanjones.com

Mark S. Reich*
Michael N. Pollack*
LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Attorneys for Plaintiff and the Proposed Class*

**pro hac vice* forthcoming